FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

97 JUL 22 AM 10: 37

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| M. VAN ATKINSON, | ) | |
| Plaintiff, | ) | |
| vs. | ) | CV 96-L-1598-S |
| METROPOLITAN LIFE INSURANCE COMPANY, a corporation, | ) ) ) | |
| Defendant. | ) | |

ENTERED

JUL 22 1997

### FINDINGS OF FACT
### AND
### CONCLUSIONS OF LAW

     This cause came on for trial before this court, without the intervention of a jury, on June 27, 1997 upon the pleadings, the order of pretrial conference, the evidence and exhibits, and the arguments of counsel. The court enters the following findings of fact and conclusions of law:

### Findings of Fact

     1.   Plaintiff Melvin Van Atkinson was employed by Metropolitan Life Insurance Company ("Met Life") as a senior insurance salesperson. He was a participant in Met Life's Temporary and Long Term Disability plans.

     2.   The Summary Plan Description ("SPD") to Met Life's disability plan at issue <u>sub judice</u> provides that, to be eligible



for Temporary Disability benefits, a participant must be fully disabled, which is defined as the inability "as determined by the insurance company, due to illness or injury, to perform any and every duty of your regular job." SPD at STD-4. Temporary Disability benefits begin four weeks after the onset of a disability and can continue for twenty-three weeks. SPD at STD-13. Long-Term Disability ("LTD") benefits begin when Temporary Disability benefits end and continue for six months, provided that the participant continues to be fully disabled. SPD at LTD-10. For LTD benefits to continue after six months, the participant must be totally disabled. SPD at LTD-10. To be totally disabled, a participant must be "unable, as determined by the insurance company, due to an illness or injury, to perform any job for which you are reasonably qualified by education, training or experience." SPD at LTD-5.

     3. Plaintiff began suffering from major depression. His last day of work was July 21, 1995. He began receiving Temporary Disability benefits on August 21, 1995. Under the SPD, Temporary Disability benefits would end no later than January 29, 1996. LTD benefits would begin at that time and, under the "fully disabled" standard, would end no later than July 29, 1996.

     4. Plaintiff is not totally disabled and is not eligible for LTD benefits after July 29, 1996.

     5. Met Life maintains internal guidelines setting the maximum period of disability payments it will make without additional medical information. These time periods are based on

2

the type of illness and the occupation of the participant. Thus when Met Life first input plaintiff's claim into the computer system in July 1995, the computer was instructed that, on back of plaintiff's November 1, 1995 disability check, it should put a remark stating that benefits would be suspended on November 24, 1995 because medical evidence did not support the length of the disability.

6. On November 1, 1995, notice was sent to plaintiff that his benefits would be suspended on November 24, 1995 unless further medical evidence was submitted. This was despite the fact that both Dr. Stuart Waddell, plaintiff's treating psychiatrist, and Mr. Winston Schepps, plaintiff's psychiatric social worker, had, over the course of plaintiff's disability, returned numerous questionnaires to Met Life all documenting that plaintiff was unable to return to his job. Dr. Waddell, as part of his routine practice, sent an update to Met Life on November 13, 1995 indicating that plaintiff was totally disabled for his regular occupation. Despite this additional medical information, plaintiff's benefits were suspended on November 24, 1995.

7. On December 12, 1995, Met Life sent plaintiff a letter stating that Met Life had set up an appointment for plaintiff to submit to an independent medical examination ("IME") by Dr. Charles Herlihy on January 18, 1996. Plaintiff did not attend the IME because it was unclear what, if any, medical evidence would suffice to reinstate plaintiff's benefits.

8. On January 26, 1996, Met Life informed plaintiff

that it was submitting plaintiff's file for an independent medical review ("IMR"). The IMR was conducted by Dr. Robert Slack, a board certified psychiatrist who is employed by National Medical Review. Defendant routinely uses National Medical Review to conduct independent medical reviews. Dr. Slack reviewed eight pages of records from Dr. Waddell dated July 12, 1995 until September 22, 1995, nine pages of records from Mr. Schepps dated August 21, 1995 to December 12, 1995, a one-page job description, and one miscellaneous page. In a letter to Met Life dated February 2, 1996, Dr. Slack stated that plaintiff's diagnosis of "adjustment disorder with depressed and/or mixed features .... is not a disabling condition per se, and in fact, a return to successful work is highly indicated in dealing with adjustment difficulties. .... The clinical information does not provide evidence of such significant changes of a temporary or permanent basis in Mr. Atkinson, that would preclude him from returning to meaningful employment at his job."

      9. Defendant failed to forward to Dr. Slack the Attending Physician's Statement of Disability form completed by Dr. Waddell on November 13, 1995. This form stated that, as of November 13, 1995, plaintiff was totally disabled from his regular occupation and would have an indefinite return to work date. Dr. Slack's IMR report does not make note of having reviewed the Dr. Waddell form, it does not list the diagnosis found on the form, it does not list the findings made on the form, and it does not include the return to work statement found on the form. Thus the

4

IMR did not include Dr. Waddell's November 13, 1995 form, even though the information on the form was compiled closest to the date that benefits were suspended and would have been most valuable in determining that benefits should have been continued.

10. Under the terms of the plan at issue, while plaintiff was fully disabled, he could have been paid nine more weeks of Temporary Disability benefits and six months of LTD benefits. The total amount of additional benefits which could have been paid to him while he was fully disabled is $176,708.47.

11. The summary plan description to the plan at issue provides:

> In carrying out their respective responsibilities under the plan, the plan administrator and other plan fiduciaries shall have discretionary authority to interpret the terms of the plan and to determine eligibility for and entitlement to plan benefits in accordance with the terms of the plan. Any interpretation or determination made pursuant to such discretionary authority shall be given full force and effect, unless it can be shown that the interpretation or determination was arbitrary and capricious.

SPD at OI-62. Met Life is the plan administrator. Met Life not only determines eligibility for benefits but also pays those benefits out of its own assets.

### Conclusions of Law

1. This court has jurisdiction of this action and of the parties thereto.

2. The Met Life employee benefit plan is an employee welfare benefit plan maintained for the purpose of providing

5

participants with medical, disability, and death benefits. 29 U.S.C. § 1002(1). This employee welfare benefit plan is also an employee benefit plan, 29 U.S.C. § 1002(3), and as such it is subject to the provisions found in the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq. 29 U.S.C. § 1003(a).

    3.    In determining whether defendant correctly denied plaintiff's claim for benefits, the claim decision "is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); see Buckley v. Metropolitan Life, No. 96-6125, 1997 WL 307004, at *4 (11th Cir. June 24, 1997)(stating that the same Firestone-based standards of review apply to factual findings as well as plan interpretations).

    4.    Although the plan at issue suffices to confer discretion on Met Life, Met Life is also paying benefits out of its own funds. Thus the heightened arbitrary and capricious standard is appropriate. Under this standard, deference is greatly diminished. Florence Nightingale Nursing Service, Inc. v. Blue Cross and Blue Shield of Alabama, 41 F.3d 1476, 1481 (11th Cir. 1995), cert. denied, 115 S. Ct. 2002 (1995). The court only examines the facts known to the administrator at the time of the decision to deny coverage. Lee v. Blue Cross and Blue Shield of Alabama, 10 F.3d 1547, 1550 (11th Cir. 1994). First, the court

must determine if plaintiff has proposed a sound interpretation of the plan to rival Met Life's interpretation. Florence Nightingale, 41 F.3d at 1481; Lee, 10 F.3d at 1550; Brown v. Blue Cross and Blue Shield of Alabama, Inc., 898 F.2d 1556, 1570 (11th Cir. 1990), cert. denied, 498 U.S. 1040 (1991). If the claimant has established a reasonable interpretation, the court must determine whether Met Life was arbitrary and capricious in adopting a different interpretation. Florence Nightingale, 41 F.3d at 1481; Lee, 10 F.3d at 1550; Brown, 898 F.2d at 1570. When a conflict of interest exists, the administrator must prove that its interpretation of the plan was not tainted by self-interest. Florence Nightingale, 41 F.3d at 1481.

    5. Met Life acted in an arbitrary and capricious manner when it failed to forward Dr. Waddell's form completed November 13, 1995 to Dr. Slack for the IMR. Given the timeliness of the information contained in the form, such information could have been used in a truly independent medical review to determine that benefits should be continued. Met Life was arbitrary and capricious when it ended plaintiff's disability benefits which should have been paid while plaintiff was fully disabled.

    6. A formal judgment in favor of plaintiff and against defendant Metropolitan Life Insurance Co., Inc. in the amount of $176,708.47 will be entered separately.

    DONE this 21st day of July 1997.

*[signature]*
SENIOR JUDGE