FILED

99 NOV 24 PM 2:01

U.S. DISTRICT COURT
N.D. OF ALABAMA

NOV 24 1999

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| M. VAN ATKINSON, | ) | |
| Plaintiff, | ) | |
| vs. | ) | CV 96-L-1598-S |
| METROPOLITAN LIFE INSURANCE COMPANY, a corporation, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

### I   Introduction

This matter is before the court following the Eleventh Circuit's May 13th order and July 9th mandate in this case. After careful consideration of the parties' arguments and submissions, this court has resolved the remaining issues as outlined and discussed below.

### II   Procedural History

This case was originally before this court from defendant's removal of the case to federal court filed June 19, 1996. This court ruled that ERISA preempted all state law claims

alleged in plaintiff's complaint filed in state court and that the only remaining claim was one arising under federal ERISA law for denial of benefits. A bench trial was held on June 27, 1997 and June 30, 1997. This court found that MetLife arbitrarily and capriciously terminated Atkinson's benefits in violation of ERISA. This court awarded $159,944.00 in damages to account for the benefits Atkinson should have been paid under the ERISA Plan and ordered MetLife to bear costs.[1] MetLife appealed the judgment of liability against it on the ERISA claim as well as this court's calculation of damages.[2] Atkinson cross-appealed the court's dismissal of his state law claims on the basis of ERISA preemption as well as the court's factual finding that "[Atkinson] is not totally disabled and is not eligible for LTD benefits after July 29, 1996."

In a second set of appeals, Atkinson petitioned the Court of Appeals for prejudgment interest of 18% per annum on the damages award and for attorney fees and costs. This court then issued an order, dated December 10, 1997, awarding prejudgment interest of 6%

---

[1] In this court's original judgment entered on July 22, 1997, plaintiff was awarded $176,708.47 in benefits. Upon the motion of defendant to amend the judgment filed August 13, 1997, the judgment was reduced to $159,944.00.

[2] In defendant's motion to amend the judgment filed August 13, 1997, defendant petitioned this court to reduce the judgment to $118,702.26.

per annum amounting to $16,371.09 but declined to award attorney fees or costs.  Atkinson appealed this order.  MetLife also appealed this court's calculation of the amount (not the rate) of prejudgment interest.

The Eleventh Circuit Court of Appeals affirmed this court's ruling as to all issues appealed except as to the calculation of damages, the calculation of the amount (not the rate) of interest, and the failure to award costs or state reasons for denial.  These issues were remanded to this court for determination.  On November 5, 1999, this court held an in chambers hearing to discuss the remanded issues.  Prior to this hearing, both parties were asked to submit briefs or any other evidentiary material relating to the three remanded issues.  After hearing oral argument from both sides and partaking in informal discussions, transcribed by a court reporter, the parties indicated that settlement was a strong possibility and requested one week to pursue such discussions.  Counsel for both parties returned to this court's chambers on November 12, 1999, and reported that no settlement had been reached.  Informal discussions once again occurred resulting only in further disputes between the parties as to the appropriate method of determining benefits.  The court took this matter under submission as of November 17, 1999.

III  Findings and Analysis

A.  Amount of Benefits Due

In determining the benefits to which Atkinson is entitled under the ERISA Plan, the first step is to calculate Atkinson's average weekly pay for the 52-week period ending with the fifth full week before Atkinson's first day of disability, in this case, July 21, 1995. In order to calculate average weekly pay, we must first determine what Atkinson's earnings were for the applicable 52-week period. This has been the key dispute of the parties throughout the entire litigation of this case. The first dispute with respect to this calculation is how to treat the $239,768.75 lump sum payment paid in December of 1995 pursuant to the settlement agreement signed in December of 1995. This lump sum payment was clearly not paid within the applicable 52-week period, but it is Atkinson's contention that this payment is specifically limited to wages and commissions owed to him prior to July 21, 1995, the date of plaintiff's disability. However, the settlement agreement does not directly address the effect of this lump sum payment on Atkinson's benefit calculation.

Turning to the Plan itself for guidance as to the treatment of the lump sum, the definition of "total earnings" for any given period is ambiguous and "is defined to be, and is limited to, the aggregate all of compensation, including commissions, paid

to a District Sales Manager, Sales Manager, or Field-Representative while actively at work or actively conducting an agency during such period. (Travel allowances, tuition refunds, suggestion awards and similar items will not be included in determining such earnings)." Using a strict interpretation of this definition, the lump sum falls outside the scope of the definition. Looking next to case law, this Circuit has not yet had the occasion to address this issue. Therefore, this court looks to the well-reasoned decisions of the Seventh Circuit. In a case similar to the one at hand, the Seventh Circuit affirmed a plan committee's conclusion that "compensation" for pension calculation purposes did not include extraordinary payments. <u>Licciardi v. Kropp Forge Division Employees' Retirement Plan</u>, 990 F.2d 979 (7th Cir. 1993). In this case, a former chief operating officer of the company received a substantial lump sum from the company in settlement for his claims for additional compensation for past services rendered. The court ruled that the lump sum was not "earnings" for purposes of calculating pension benefits because there was no affirmative evidence that the settlement was intended to affect the pension. The parties failed to deal with the question of what effect the lump sum payment would have on pension rights so it was reasonable, the court concluded, to assume that the settlement was to have no effect on the plaintiff's pension.

Taking the reasoning from this case, the lump sum payment could rightfully be excluded from benefit calculations since the parties failed to address the consequences of the payment on Atkinson's benefits. However, this court finds that by the very nature of Atkinson's work, some portion of that payment was intended to relate back to the applicable 52-week period. In plaintiff's role as a salesman, his compensation consisted of both present and future renewal commissions for policies he sold while employed by MetLife. The settlement agreement entered between the two parties appears to reflect a settlement for all disputed present and future commissions.[3] Thus only the portion of this payment that reflects present commissions can be included as earnings for the period in question.

In determining what portion of the lump sum payment reflects present commissions, this court looks to the forms MetLife's field payroll administration office filled out both prior and subsequent to the settlement agreement's signing and pursuant payment. The original September 18, 1995, earnings calculation performed by the field payroll administration office reflects a

---

[3] The settlement agreement states that by accepting the settlement amounts, Atkinson releases MetLife "from any and all claims, . . . expenses and compensation whatsoever, known or unknown, foreseen or unforeseen, . . . related in any way to Atkinson's employment with Metropolitan [or] compensation owed to him by Metropolitan.

base pay figure of $152,350.00. After the settlement was reached between the parties in December 1995, a new earnings calculation was performed and a revised base figure of $270,725.89 was entered on the revised Form 1732. This figure was intended to incorporate the proper portion of the lump sum payment allocable to plaintiff's pay for the period in question.

It is plaintiff's contention that the entire amount should be included. However, there is no affirmative evidence to support this contention. In fact, there is little evidence that even a portion should be included. Nevertheless, viewing the evidence in a light most favorable to the plaintiff, it is the opinion of this court that the revised form 1732 as incorporated in the settlement agreement most accurately reflects the parties' intent as to the effect of the lump sum payment.

The next issue for resolution is the determination of plaintiff's base pay for the 52-week period in question without the consideration of the lump sum. It is the opinion of this court that the mutually compromised disability benefits figure reached by both parties as part of the settlement negotiations and the settlement agreement signed by both parties in December 1995, controls in calculating the benefits to be paid to plaintiff. The settlement agreement figure, taken from the revised form 1732, reflects plaintiff's true base earnings for the applicable period

and incorporates the portion of the lump sum payment to be included. This figure yields a weekly temporary disability payment of $4,165 and a monthly long term disability payment of $13,536.29. This court is of the opinion that these figures follow the intent of the parties as this settlement agreement reflects a mutually compromised figure reached through settlement negotiations.

It is also important to point out that it was MetLife, not Atkinson, that appealed this court's original calculation of benefits. Instead of arguing his agreement with this court's original calculations, which in actuality is the effect of his not appealing the calculation, he is using the door opened by defendant's appeal to contend that he is now due higher amounts.

Based on the foregoing discussion, plaintiff is due a total of $118,702.26 in benefits which breaks down to $37,485.12 in short term disability benefits and $81,217.14 in long term disability benefits.

B. Prejudgement Interest

Plaintiff is entitled to prejudgement interest at the rate of 6% per annum. The interest on the short term disability benefits began to accrue on November 25, 1995, the date the first of the nine weeks of additional temporary disability benefits became due. The interest on the long term disability benefits began to accrue on January 27, 1996, the date the first of the

additional six months of long term disability benefits became due. Therefore, plaintiff is entitled to $30,189.30 in prejudgment interest.

C. Costs

The last issue on remand involves the amount of costs plaintiff is entitled to recover. The following costs are hereby awarded or denied. First, plaintiff has submitted $1,723.40 in travel expenses incident to the taking of depositions of two witnesses. In the court's discretion, these costs are not recoverable as expenses. Courts typically recognize that the taxation of travel expenses as costs may be appropriate in extraordinary and compelling circumstances. DiCecco v. Dillard House, Inc., 149 F.R.D. 239, 240 (N.D. Ga. 1993). The court finds that no such circumstance exists here and, as such, the travel expenses are not recoverable as costs.

In addition, defendant has submitted $1,000 for an expert witness fee. The maximum amount of an expert witness fee is governed by 28 U.S.C. § 1821, which allows only for $40.00 per day. Both parties have conceded to this amount. Thus, plaintiff's demand of $1,000 is modified to $40 per day.

Plaintiff also claims $226.02 in copying expenses. Plaintiff bears the burden of proving these expenses and has failed to do so. Therefore, in the court's discretion, these costs are

not recoverable. Finally, plaintiff submits $2,077.30 in fees for depositions. In the court's discretion, plaintiff is entitled to this entire amount. These depositions were obtained for use in the case and appeared reasonably necessary at the time of taking. Therefore, plaintiff's submitted fee of $2,077.30 is recoverable as costs.

IV   Conclusion

It is hereby ORDERED, ADJUDGED, AND DECREED that defendant MetLife is to pay on behalf of plaintiff M. Van Atkinson $118,702.26 in additional disability benefits, $30,189.30 in prejudgment interest, and $2,117.30 in costs. In accordance with the foregoing, a separate judgment will be entered.

DONE this 24th day of November 1999.

*[signature]*
SENIOR JUDGE